518 S.E.2d 44

**TWELFTH RMA PARTNERS, L.P., Respondent,**

v.

**NATIONAL SAFE CORPORATION, Barbara B. Smith and Roy W. Smith, Appellants.**

**No. 2991.**

Court of Appeals of South Carolina.

Submitted April 13, 1999.
Decided May 10, 1999.

636

S. Jahue Moore, of Kirkland, Wilson, Moore, Taylor & O'Day, of West Columbia, for appellants.

F. Xavier Starkes and William T. Toal, both of Johnson, Toal & Battiste, of Columbia, for respondent.

GOOLSBY, Judge:

This is a collection case that was referred to the master-in-equity for final order with direct appeal to the supreme court. The master found that Roy Smith and Barbara Smith defaulted on a note held by Twelfth RMA Partners, L.P. The master awarded Twelfth $1,002,421.86 in damages, including attorney fees. The Smiths appeal the decision. We affirm.[1]

---

[1] Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

## FACTS

National Safe Corporation borrowed $300,000.00 and $200,-000.00 from Pioneer Savings Bank (Pioneer). Pioneer combined these two notes and formed a renewal line of credit for $500,000.00. Mr. Smith signed the note as president of National Safe Corporation. Mr. and Mrs. Smith each signed an unconditional Guarantee of Payment and Performance that guaranteed payment of the note. Shortly thereafter, the United States government closed Pioneer as a result of the savings and loan crisis and appointed the Resolution Trust Corporation (RTC) as receiver. RTC then assigned the note and guarantee to Twelfth on November 15, 1994. National Safe Company filed for bankruptcy in December, 1996.

R.M.A. Partners, L.P., sued the Smiths for the balance on the notes in June, 1995. R.M.A. Partners filed a motion for summary judgment, but the master denied it because of uncertainty as to the identity of the proper plaintiff. The master heard the case on August 13, 1997. On the day of trial, R.M.A. Partners made a motion to substitute Twelfth R.M.A. Partners, L.P., (Twelfth) as the appropriate plaintiff. The master granted this motion over the Smiths' objection.

During the trial, the master allowed the testimony of Judy Every, a portfolio manager with Twelfth, over the Smiths' objection that her testimony was hearsay. The master found that the Smiths had defaulted on the loan, that Twelfth was the holder of the note, and that the Smiths owed $484,010.27 in principal, $10,798.00 in late charges, $504,113.59 in interest, and $3,500.00 in attorney fees. The Smiths appeal.

## ISSUES ON APPEAL

(1) Is the lawsuit barred by South Carolina's three-year statute of limitations, or does the federal six-year statute of limitations apply?

(2) Is the lawsuit barred by the equitable doctrine of laches?

(3) Did the substitution of Twelfth as plaintiff on the day of trial unduly prejudice the Smiths?

(4) Did the master err in allowing the testimony of Judy Ray Every?

## STANDARD OF REVIEW

■ This case is an action at law that was referred to the master-in-equity with direct appeal to the supreme court. The appellate court will correct any errors of law, but it must affirm the master's factual findings unless no evidence exists that reasonably supports those findings. *Jefferies v. Phillips*, 316 S.C. 523, 451 S.E.2d 21 (Ct.App.1994).

## DISCUSSION

### (1) Statute of Limitations

■ The Smiths argue the master incorrectly applied the six-year statute of limitations found in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821(d)(14), instead of applying the South Carolina three-year statute of limitations. S.C.Code Ann. § 15–3–530 (Supp.1997). We disagree.

The relevant language in the FIRREA is found in 12 U.S.C. § 1821(d)(14)(A):

(1) Statute of limitations for actions brought by conservator or receiver

  (A) In general

    Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation [i.e., the FDIC] as conservator or receiver shall be—

    (i) in the case of any contract claim, the longer of—

    (I) the 6–year period beginning on the date the claim accrues; or

    (II) the period applicable under state law.

The statute mentions "the Corporation," which has been defined in the statute as the FDIC. FIRREA gives the RTC the same rights and powers as the FDIC. 12 U.S.C.A. § 1441a(b)(4)(A). The statute, however, is silent as to its applicability to the assignees of the RTC. The Smiths argue that this silence means the court must apply the three-year statute of limitations. Twelfth argues that the law of assignments, or alternatively, the UCC, should determine which statute applies.

■ In South Carolina, it is well established that an "assignee ... stands in the shoes of its assignor ..." *Single-*

*tary v.. Aetna Cas. & Sur. Co.*, 316 S.C. 199, 201, 447 S.E.2d 869, 870 (Ct.App.1994). When a contract is assigned, the assignee should have all the same rights and privileges, including the right to sue on the contract, as the assignor. Under the UCC in South Carolina, a "[t]ransfer of an instrument vests in the transferee such rights as the transferor has therein." S.C.Code Ann. § 36–3–201 (1976).

The Smiths argue that the right in question, the RTC's right to sue under the six year statute of limitations, would not transfer to Twelfth. They cite *Wamco, III, Ltd. v. First Piedmont Mortg. Corp.*, 856 F.Supp. 1076 (E.D.Va.1994) for the proposition that the statute confers a personal benefit, or right, onto the RTC that would not transfer to an assignee.

*Wamco*, however, is against the weight of authorities, as the case itself points out. Also, the Virginia Supreme Court refused to follow the *Wamco* decision and held that the right to sue under the six-year statute of limitations is not a personal benefit or right. The court further stated "the receiver's right to sue within the statute of limitations period is inherent in its possession of the instruments at issue and would thus be among the 'rights, remedies and benefits which are incidental to the thing assigned,' and not merely a right 'personal to the assignor and for [its] benefit only.'" *Union Recovery Ltd. Partnership v. Horton*, 252 Va. 418, 477 S.E.2d 521, 524 (1996).

The majority of state and federal courts have interpreted the federal statute to grant to the assignee a six-year statute of limitations. *See, e.g., FDIC v. Bledsoe*, 989 F.2d 805 (5th Cir.1993); *N.S.Q. Associates v. Beychok*, 659 So.2d 729 (La. 1995); *Tivoli Ventures, Inc. v. Bumann*, 870 P.2d 1244 (Colo. 1994) (en banc); *Investment Co. of the Southwest v. Reese*, 117 N.M. 655, 875 P.2d 1086 (1994); *Jackson v. Thweatt*, 883 S.W.2d 171 (Tex.1994).

We agree that the right to sue under the six-year statute of limitations is not personal to the RTC, but is available to all assignees or transferees of the RTC. The claim brought by Twelfth, therefore, is not barred by the statute of limitations.

### (2) Laches

The Smiths next argue that laches should bar Twelfth from using the extended federal statute of limitations.

We disagree. Laches is an equitable doctrine consisting of the elements of (1) a delay (2) that is unreasonable and (3) that causes prejudice. *Terry v. Lee,* 314 S.C. 420, 445 S.E.2d 435 (1994). Laches within the period of the statute of limitations is no defense at law. *Crotwell v. Whitney,* 229 S.C. 213, 92 S.E.2d 473 (1956) (citations omitted). We conclude the Smiths have not shown the requisite unreasonable delay since the action was within the statute of limitations period.

### (3) Substitution of Plaintiff

■ The Smiths next argue that the substitution of Twelfth RMA Partners, L.P., for RMA Partners, L.P., unduly prejudiced them. We disagree.

■ Rule 15, SCRCP, provides that the complaint may only be amended by leave of the court and "leave to amend shall be freely given when justice requires and does not prejudice any other party." A motion to amend is within the sound discretion of the trial judge and the opposing party has the burden of establishing prejudice. *Foggie v. CSX Transp., Inc.,* 315 S.C. 17, 431 S.E.2d 587 (1993).

The Smiths rely on *Valentine v. Davis,* 319 S.C. 169, 460 S.E.2d 218 (Ct.App.1995) for the proposition that a plaintiff may not add a new plaintiff to a case to assert a claim against the defendant. In this case, however, no new claims are being added. The court is only changing the name of the plaintiff. The subject of the claim, the underlying note on which the Smiths defaulted, is still the same.

The Smiths also argue that the case was not brought in the name of the real party in interest and should be dismissed under Rule 17, SCRCP. The Smiths have not shown any prejudice. The trial court substituted the real party in interest, as Rule 17, SCRCP, expressly allows.

### (4) Ms. Every's Testimony

■ Finally, the Smiths argue that the master should not have allowed the testimony of Judy Every. We disagree.

First, they base this argument on the fact that she did not take an oath prior to giving the testimony. The record shows that no oath was given prior to Every's testimony. The record also shows, however, that the Smiths did not object.

"The admission of unsworn testimony in a case is a mere irregularity which violates no constitutional provision, and does not affect the jurisdiction of the tribunal, and if unsworn testimony is received into evidence without objection, it may be considered the same as any other evidence in the case." 98 C.J.S. *Witnesses* § 320, at 22 (1957).

■ The Smiths also argue that the master erred in allowing the testimony because it was hearsay. We disagree.

The master allowed the testimony under the business records exception to the hearsay rule. The business records exception is found in both the South Carolina Code at § 19-5-510 (1985) and Rule 803(6) of the South Carolina Rules of Evidence. Both exceptions require that the evidence be given by a "custodian or other qualified witness." Ms. Every testified that the records about which she testified were part of her file that she maintained in Twelfth's regular course of business.

The Smiths argue, however, that she was not the custodian "at or near the time" the records were made. Here, Ms. Every's testimony merely conveyed information from a person "with knowledge" at the time the records were created, a situation expressly allowed under Rule 803(6).

**AFFIRMED.**

HOWELL, C.J., and CONNOR, J., concur.